Shawn A. McMillan, Esq. – SBN: 208529
attyshawn@netscape.net
Stephen D. Daner, Esq. – SBN: 259689
steve.mcmillanlaw@gmail.com
THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
4955 Via Lapiz
San Diego, California 92122
Telephone: (858) 646-0069
Facsimile: (858) 746-5283

Attorneys for Plaintiffs K.W.1 and K.W.2

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.W.1, an individual; K.W.2, an individual;<br><br>                    Plaintiffs,<br><br>           vs.<br><br>COUNTY OF RIVERSIDE, a public entity; M. SONIA CORREA, an individual; DANIELA ELIHU, an individual; KAILA PAUL, an individual; JUAN CEVALLOS, an individual; KRISTEN PRESTON, an individual; and DOES 1 through 20, inclusive,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>Claim 1:  42 U.S.C. §1983 (Failure to Protect)<br>Claim 2:  *Monell*-Related Claim (Failure to Protect)<br>Claim 3:  Breach of Mandatory Duties<br>Claim 4:  Negligence<br><br>**JURY TRIAL DEMANDED** |

/ / /

**Jurisdiction and Venue**

1. This action is brought pursuant to 42 U.S.C. §1983 to seek redress for Defendants' actions and/or omissions under color of law. Defendants' conduct deprived Plaintiffs of their fundamental constitutional rights secured under the United States Constitution, including the Fourth and Fourteenth Amendments, and under federal and state law.

2. Jurisdiction is conferred by 28 U.S.C. §§1343(a)(3) and 1343(a)(4), which provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred by 28 U.S.C. §1331 because the claims for relief derive from the United States Constitution and the laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state laws claims, pursuant to 28 U.S.C. §1367.

3. The acts and omissions complained of herein occurred in the County of Riverside, and it is believed that all living parties currently reside in the County of Riverside. Venue is proper in the District Court for the Eastern District of California.

4. Plaintiffs make the following allegations and claims upon personal belief, investigation of their counsel, and on information and belief.

**The Parties**[1]

5. At all times relevant to this Complaint, Plaintiff K.W.1, was a resident of Riverside County, California. K.W.1 was born in December 2001.

6. At all times relevant to this Complaint, Plaintiff K.W.2, was a resident of Riverside County, California. K.W.2 was born in 2002.

7. Defendant County of Riverside ("County") is a public entity of which the Department of Public Social Services Children's Services Division ("DPSS") is a subdivision.

---

[1] Plaintiffs' initials are being used due to the sensitive nature of the allegations, and because at all relevant times the Plaintiffs were minors.

8.   DPSS Social Worker M. Sonia Correa ("Ms. Correa" or "Correa") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

9.   DPSS Supervising Social Worker Daniela Elihu ("Ms. Elihu" or "Elihu") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

10.   DPSS Social Worker Kaila Paul ("Ms. Paul" or "Paul") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

11.   DPSS Social Worker Juan Cevallos ("Mr. Cevallos" or "Cevallos") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

12.   DPSS Social Worker Kristen Preston ("Ms. Preston" or "Preston") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

13.   Hereinafter, when referred to collectively, the Defendants in paragraphs 8 through 12, inclusive, may occasionally be referred to as the SOCIAL WORKER DEFENDANTS.

14.   Plaintiffs are ignorant of the true names and capacities of those County of Riverside Defendants sued herein as County Defendant DOES 1 through 20, and for that reason has sued such County of Riverside Defendants under such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to identify the County Defendant DOES when their identities have been ascertained. Each of the fictitiously named County of Riverside DOE Defendants was in some manner liable and legally responsible for the harms sustained by Plaintiffs in that their conduct caused the damages and injuries set forth herein.

15.   Whenever this Complaint makes reference to any act of Defendants, such allegations shall be deemed to mean all named Defendants, or their officers,

1    agents, managers, representatives, employees, heirs, assignees, customers, tenants,

2    who did or authorized such acts while actively engaged in the operation,

3    management, direction or control of the affairs of Defendants (or any of them) and

4    while acting within the course and scope of their duties, except as specifically

5    alleged to the contrary.

6  16.   Defendants were the knowing agents and/or alter egos of one another. Defendants

7    directed, ratified, and/or approved each other's conduct and that of each other's

8    agents or employees. Defendants agreed upon, approved or ratified each other's

9    conduct, or otherwise conspired together to commit all of the acts and/or

10   omissions alleged herein.

11                         **COMMON ALLEGATIONS**

12   –     ***In 2007, David Jakubowski is Caught Licking His Friend's Penis; DPSS***

13         ***is Notified and Responds***

14  17.   In 2007, David Jakubowski[2] was living with his mother, Debra Iselhart, and his

15    younger brother, D.B.

16  18.   In August 2007, the County received an Emergency Response Referral alleging

17    that David Jakubowski was engaging in inappropriate sexual behavior with other

18    children in his apartment complex. David Jakubowski was caught licking his

19    friend's penis.

20  19.   Ms. Iselhart reported David Jakubowski's sexually inappropriate conduct to his

21    school. David Jakubowski's school put him on "watch," and required that he never

22    be left alone with any other children. Likewise, Ms. Iselhart stopped leaving David

23    Jakubowski alone with other children – including his brother, D.B.

24  20.   Social Worker Christine Fowler investigated the allegation, and interviewed Ms.

25    Iselhart. She confirmed to Ms. Foweler that David Jakubowski had been caught

26    licking his friend's penis.

27

28    [2] David Jakubowski is no longer a minor.

21.    Ms. Fowler documented David Jakubowski's sexually inappropriate conduct in David Jakubowski's Juvenile Case Files, the County's agency records, and the CWS/CMS database.

     –    ***The County Takes Custody of David Jakubowski***

22.    In or around January 2009, D.B. was scalded in the shower. The County removed David Jakubowski and D.B., and took custody of David Jakubowski and D.B.

23.    The County and Social Worker Cindy Moreau placed David Jakubowskiin Foster Home No. 1. D.B. was placed with his biological father.

24.    The County and DOES 1-20, did not disclose or tell Foster Home No. 1 that (1) David Jakubowski had a prior history of inappropriate sexual behaviors involving a younger boy, (2) David Jakubowski's School did not allow him to be left alone with other children, or (3) that Ms. Iselhart did not allow David Jakubowski to be left alone with other children – including D.B.

     –    ***Out of the Blue, David Jakubowski Denies That he Sexually Abuses D.B.***

25.    On January 23, 2009, Social Worker Rebecca Miranda interviewed David Jakubowski at his school. During this interview, Ms. Miranda asked how D.B. got hurt in the shower. Without prompting, David Jakubowski blurted out that he does "nothing sexual" with D.B.

26.    Ms. Miranda was concerned by this revelation, and asked why David Jakubowski mentioned it, because it was not related to her question. David Jakubowski appeared very nervous and said that he washes his own private parts, and that D.B. also washes his own private parts. David Jakubowski wanted to change the subject.

27.    Ms. Miranda documented her concerns and David Jakubowski's statements in David Jakubowski's Juvenile Case Files, the County's agency records, and the CWS/CMS database.

/ / /

1
2

– ***In April 2009, The County Places David Jakubowski in Foster Home No. 2***

3  28.  In April 2009, the County and Ms. Miranda placed David Jakubowski in Foster
4       Home No. 2.

5  29.  The County and DOES 1-20, did not disclose or tell Foster Home No. 2 that (1)
6       David Jakubowski had a prior history of inappropriate sexual behaviors involving
7       a younger boy, (2) David Jakubowski's School did not allow him to be left alone
8       with other children, or (3) that Ms. Iselhart did not allow David Jakubowski to be
9       left alone with other children – including his brother D.B.

10  –  ***David Jakubowski Engages in Aggressive and Negative Behaviors in***
11     ***Foster Home No. 2; His Foster Parents ask the County to Remove David***
12     ***Jakubowski From Their Home***

13  30.  Between April 2010 through November 2010, David Jakubowski was physically
14       and verbally acting out towards his foster parents and foster siblings. David
15       Jakubowski engaged in and/or displayed negative behaviors, would lash out at his
16       foster parents and foster siblings, and become aggressive toward his foster
17       siblings. David Jakubowski would fight his foster brother. David Jakubowski
18       displayed uncontrollable anger that built up until he exploded. David
19       Jakubowski's foster parents struggled everyday to deal with David Jakubowski's
20       physical and verbal aggressive behaviors. Defendant Correa and DOES 1-20 were
21       expressly notified of David Jakubowski's aggressive behaviors.

22  31.  Finally, in November 2010, David Jakubowski's foster parents could no longer
23       handle David Jakubowski's aggressive behaviors. David Jakubowski's Foster
24       Home No. 2 decided to – and did – request that the County remove David
25       Jakubowski from their home. The County removed David Jakubowski from Foster
26       Home No. 2 and began looking for a new placement.

27  / / /
28

– ***In 2010, The County Places David Jakubowski in the Wheeler Home (Foster Home No. 3) – Without Disclosing His Sexually Inappropriate Conduct or Other Potentially Dangerous Propensities***

32. In November and/or December 2010, Defendants Correa, Elihu, Paul, and DOES 1-20, knew that David Jakubowski had a history of inappropriate sexual behaviors and episodes of violent acing out. This information was documented in David Jakubowski's Juvenile Case Files, the County's agency records, and the CWS/CMS database.

33. Defendants Correa, Elihu, Paul, and DOES 1-20, had trouble placing David Jakubowski in a new foster home, in part based on his noted behaviors. There were no placements available.

34. Jamie Norman, a social worker with Valley Oaks, Foster Family Agency, recommended that Defendants Correa, Elihu, Paul, and DOES 1-20, look at Ms. Wheeler as a potential placement.

35. Defendants Correa, Elihu, Paul, and DOES 1-20, inquired with Ms. Wheeler. She advised that she was not a licensed or certified foster care provider, but would be willing to consider David Jakubowski's placement in her home.

36. Ms. Wheeler told Defendants Correa, Elihu, Paul, and DOES 1-20 that her biological and/or adoptive children lived in her home – including, but not limited to, minors males K.W.1, K.W.3, A.W.1, A.W.2, and minor female K.W.2.

37. In or around November 2010, Defendants Correa, Elihu, Paul, and DOES 1-20, placed, and/or participated in the decision to place David Jakubowski in Ms. Wheeler's home (Foster Home No. 3).

38. But, Defendants Correa, Elihu, Paul, and DOES 1-20, did not disclose or tell Ms. Wheeler that (1) David Jakubowski had a prior history of inappropriate sexual behaviors toward a younger boy, (2) David Jakubowski's School did not allow David Jakubowski to be left alone with other children, or (3) that Ms. Iselhart did not allow David Jakubowski to be left alone with other children – including David

1    Jakubowski's younger brother, D.B.

2    39.   Defendants Correa, Elihu, Paul, and DOES 1-20 knew that Ms. Wheeler had

3          several young boys in her home and care. But, Defendants Correa, Elihu, Paul, and

4          DOES 1-20 never warned Ms. Wheeler against leaving David Jakubowski alone

5          with younger boys.

6    40.   Ms. Wheeler was provided with a Statement of Dangerous Propensities, but the

7          County's Statement of Dangerous Propensities did not disclose David

8          Jakubowski's prior sexually inappropriate conduct or physically aggressive

9          behaviors, or for that matter any other potentially dangerous behaviors.

10   41.   If Ms. Wheeler had been fully informed about David Jakubowski's prior history of

11         inappropriate sexual behaviors, and known aggressive tendencies she would not

12         have accepted David Jakubowski's placement in her home or exposed her children

13         and family to him.

14         –   ***Ms. Wheeler Becomes David Jakubowski's Legal Guardian***

15   42.   In or around 2011, Defendants Correa, Elihu, and DOES 1-20 had trouble finding

16         an extended family member and/or long term placement for David Jakubowski

17   43.   Defendants Correa, Elihu, and DOES 1-20 decided to and/or participated in the

18         decision to have Ms. Wheeler become David Jakubowski's Legal Guardian.

19   44.   In or around June 2011, Defendants Correa, Elihu, and DOES 1-20 conducted a

20         home study, social study, and/or legal guardian assessment of the Wheeler home.

21         Through this investigation, Defendants Correa, Elihu, and DOES 1-20 knew that

22         David Jakubowski was readily interacting with the Plaintiffs K.W.1 and K.W.2,

23         and K.W.3, A.W.1, and A.W.2 – and/or sharing a bedroom with certain minor

24         male children.

25   45.   During the legal guardianship process, Defendants Correa, Elihu, and DOES 1-20

26         did not disclose or warn Ms. Wheeler or the Plaintiffs, in any way, that (1) David

27         Jakubowski had a prior history of inappropriate sexual behaviors toward younger

28         boys, (2) David Jakubowski's School did not allow David Jakubowski to be left

1  alone with other children, or (3) that Ms. Iselhart did not allow David Jakubowski

2  to be left alone with other children – including David Jakubowski's younger

3  brother, D.B. In addition, these Defendants did not disclose the reasons why David

4  Jakubowski had been expelled from his prior placement, i.e., due to his

5  documented physically aggressive and unruly behaviors.

6  46.  If Ms. Wheeler had been fully informed about David Jakubowski's prior history of

7  inappropriate sexual behaviors, and physically aggressive tendencies she would

8  not have accepted David Jakubowski into her family home and would not have

9  agreed to become David Jakubowski's legal guardian.

10 47.  On or about July 21, 2011, the Court approved Ms. Wheeler as David

11  Jakubowski's legal guardian.

12 48.  Defendants County, Correa, Elihu, and DOES 1-20 did not close David

13  Jakubowski's juvenile case, and did not terminate their supervision. Instead, David

14  Jakubowski's case remained open, and DPSS's supervision continued.

15  –  ***David Jakubowski Repeatedly Sexually Assaults and Rapes His Younger***

16  ***Foster Brothers***

17 49.  Beginning in or around 2011 or 2012, David Jakubowski repeatedly sexually

18  assaulted and raped his foster brothers, including Plaintiff K.W.1.

19 50.  David Jakubowski would position himself behind his younger foster brothers and

20  rub his penis between his inner thighs and/or insert his penis into the minor male

21  Plaintiff's anus. David Jakubowski would repeatedly sexually assault and rape the

22  minor male Plaintiff K.W.1, until he reached climax and ejaculated.

23 51.  David Jakubowski also forced his younger foster brothers to orally copulate him

24  until he reached climax and ejaculated on more than one occasion.

25 52.  David Jakubowski carried out his sexual assaults by force. Plaintiff K.W.1 would

26  fight and attempt to resist David Jakubowski's sexual assaults. But, David

27  Jakubowski would punch, kick, and hold the Plaintiff down during the sexual

28  assaults and rapes. David Jakubowski foiled the Plaintiff's repeated attempts to

flee and ignored his verbal and physical protests. David Jakubowski would trap Plaintiff in the bedroom by blocking the door with a mattress.

53. David Jakubowski threatened to stab, punch, kick, and/or beat up the Plaintiff, to keep him from disclosing the sexual abuse and rapes. When Plaintiff threatened to disclose the abuse, David Jakubowski would become enraged and would carry out his physical threats and strike Plaintiff.

– ***David Jakubowski Sexually Assaults K.W.2***

54. Beginning in or around 2011 or 2012, David Jakubowski started to sexually assault and/or inappropriately touch minor female Plaintiffs, K.W.2. David Jakubowski would dry hump K.W.2 from behind.

– ***In 2011, D.B. Discloses Prior Sexual Abuse by David Jakubowski – The County Does Not Warn Ms. Wheeler***

55. In September 2011, D.B. began acting out sexually, exposing himself at school, and masturbating in front of other children.

56. D.B. disclosed that David Jakubowski had sexually abused him. As a result, Social Worker John Dean made a Suspected Child Abuse Report.

57. On or about September 14, 2011, Cory Brooks, D.B.'s father, confirmed to Mr. Dean that David Jakubowski sexually abused D.B.

58. On September 19, 2011, Mr. Dean informed Defendant Cevallos and DOES 1-20 that D.B. disclosed prior sexual abuse by David Jakubowski

59. Mr. Cevallos and DOES 1-20 documented D.B.'s sexual molestation in David Jakubowski's agency records, referral history, and CWS/CMS Database.

60. At this time, Mr. Cevallos and DOES 1-20 knew that David Jakubowski was sharing a bedroom with and/or regularly interacted with his foster brothers – but did absolutely nothing to protect the children in Ms. Wheeler's home from David Jakubowski's assaults.

61. Mr. Cevallos  and DOES 1-20 did not warn or tell Ms. Wheeler that David Jakubowski was known and/or suspected to have sexually abused other children,

including his brother D.B. Mr. Cevallos  and DOES 1-20 did not remove David Jakubowski from the Wheeler home. Mr. Cevallos and DOES 1-20 did not implement or set up safeguards to protect the Plaintiffs. Mr. Cevallos  and DOES 1-20 did not question or interview David Jakubowski regarding the sexual abuse allegations. Nor did Mr. Cevallos undertake any effort at all to determine whether David Jakubowski had similarly molested or raped the other children in Ms. Wheeler's home.

62. Instead, Mr. Cevallos  and DOES 1-20 deliberately suppressed and/or knowingly ignored David Jakubowski's sexual abuse of D.B. and refrained from disclosing the information to Ms. Wheeler and/or the Plaintiffs.

– ***In November 2012, More Sexual Abuse Allegations are Leveled Against David Jakubowski – The County Does Not Remove David Jakubowski or set up Appropriate Safeguards***

63. In November 2012, Defendants Cevallos, Preston, and DOES 1-20 were informed of allegations that David Jakubowski had sexually abused K.W.3 – i.e., David Jakubowski forced K.W.3 to orally copulate him. There were also allegations that David Jakubowski asked A.W.2 to orally copulate him.

64. At this time, Defendants Cevallos, Preston, and DOES 1-20 knew that David Jakubowski had a history of inappropriate sexual behavior – including the prior allegations that he sexually molested D.B. Despite this, Defendants Cevallos, Preston, and DOES 1-20 did not remove David Jakubowski from the Wheeler home. Defendants Cevallos, Preston, and DOES 1-20 did not implement or set up safeguards to protect the Plaintiffs from David Jakubowski Defendants Cevallos, Preston, and DOES 1-20 did not disclose these sexual abuse allegations to Ms. Wheeler or otherwise advise her to implement protective measures to ensure the safety of the minor Plaintiffs who were or could be exposed to David Jakubowski

65. Defendants Cevallos, Preston, and DOES 1-20 knowingly allowed David Jakubowski unfettered and unrestricted access to Plaintiffs K.W.1, and K.W.2.

1        –    ***David Jakubowski Sexually Assaults and Rapes K.W.3***

2  66.   On or about January 9, 2013, Ms. Wheeler took her infant granddaughter to urgent
3        care, for an allergic reaction to Aquaphor.

4  67.   While Ms. Wheeler was gone, David Jakubowski lured A.W.1 and K.W.3 into his
5        bedroom. Once inside, David Jakubowski blocked the door with a mattress, and
6        trapped A.W.1 and K.W.3 inside.

7  68.   David Jakubowski pulled K.W.3's pants down, and then his own. Next, David
8        Jakubowski sexually assaulted and raped K.W.3.

9  69.   K.W.3 tried to resist, and told David Jakubowski to stop. But, David Jakubowski
10       was stronger, and continued his sexual assault. David Jakubowski forced A.W.1 to
11       witness the assault.

12 70.   K.W.2 heard the assault, and she tried to intervene, and get into the bedroom. But,
13       the mattress prevented her access.

14 71.   After the sexual assault and rape, A.W.1 and K.W.3 escaped and crawled out the
15       bedroom window, crawled across the roof, and re-entered the house through the
16       next bedroom window.

17 72.   Once inside, K.W.2 asked A.W.1 and K.W.3 what happened. A.W.1 confirmed
18       David Jakubowski's sexual assault. But, K.W.3 refused to talk about the sexual
19       assault and rape.

20 73.   When Ms. Wheeler returned from Urgent Care, K.W.2 disclosed David
21       Jakubowski's sexual assault and rape. Ms. Wheeler called Defendant Preston, and
22       disclosed the sexual assault and rape. Defendant Preston instructed Ms. Wheeler to
23       call the County's child abuse hotline, and make an official child abuse report so
24       the proper authorities could respond. She did.

25       –    ***The County Investigates David Jakubowski's Sexual Assault and Rape;***
26            ***the County Does Not Believe the Sexual Assault Victims***

27 74.   On or about January 10, 2013, Defendant Preston and County Social Worker
28       Michael Huser investigated David Jakubowski's sexual assault.

COMPLAINT FOR DAMAGES

75. A.W.1 and K.W.2 told Defendant Preston and Mr. Huser about David Jakubowski's sexual assault, and the details.

76. Defendant Preston and Mr. Huser doubted that any sexual assault had occurred. They believed that A.W.1 and K.W.2 fabricated the whole story. But, Ms. Wheeler felt confident that A.W.1 and K.W.2 told the truth. And, when pressed, K.W.2 was adamant that David Jakubowski sexually assaulted K.W.3.

77. Accordingly, Defendant Preston and Mr. Huser reluctantly called the Hemet Police Department. Officers Caballero and Barnett responded to the scene.

78. Officers Caballero and Barnett attempted to interview K.W.3, but he just hid his face, and refused to speak to the police officers. Eventually K.W.3 found his voice, and confirmed David Jakubowski's sexual assault. Officers Caballero and Barnett initiated a criminal investigation of David Jakubowski's sexual assault.

79. The Hemet Police Department assigned Officer Rene McNish to investigate the abuse allegations. Despite David Jakubowski's ongoing criminal investigation for sexual assault, Defendant Preston and Social Worker Supervisor Carrie Mosiello expressed a concern to the Juvenile Court, that the sexual abuse allegations might be fabricated.

80. Ms. Wheeler disagreed, and believed A.W.1, K.W.2, and K.W.3. She requested that David Jakubowski's guardianship be immediately rescinded, and that David Jakubowski be removed from her home. Defendant Preston removed David Jakubowski from Plaintiffs' home.

– *David Jakubowski is Placed in a New Foster Home; the County Does Not Warn of Disclose David Jakubowski's Sexual Assaults and/or Sexually Inappropriate Behaviors*

81. On or about January 10, 2013, Ms. Preston and DOES 1-20, placed, and/or participated in the decision to place David Jakubowski in Foster Home No. 4 – through the Family Health and Support Network, Foster Family Agency. But, as with David Jakubowski's prior placements, Defendant Preston and DOES 1-20,

did not disclose or tell Foster Home No. 4 or foster agency that (1) David Jakubowski had a prior history of inappropriate sexual behaviors toward younger boys, (2) David Jakubowski was the subject of an ongoing criminal investigation for sexually abusing his foster brothers, (3) David Jakubowski's School did not allow David Jakubowski to be left alone with other children, or (4) that Ms. Iselhart did not allow David Jakubowski to be left alone with other children – including David Jakubowski's younger brother, D.B.

82.   Preston and DOES 1-20 knew that there were several male minors in Foster Home No. 4, and that David Jakubowski would share a bedroom with his foster brother(s). But, as apparently was their custom and practice, Defendant Preston and DOES 1-20 never warned Foster Home No. 4 of David Jakubowski's sexually inappropriate and/or assaultive propensities.

–   ***During the Criminal Investigation, David Jakubowski Admits to Sexually Assaulting the Plaintiffs***

83.   During Officer McNish's investigation, K.W.1, K.W.3, and A.W.1 disclosed that they were repeatedly – over an extended period of time – sexually abused and/or assaulted by David Jakubowski (*See* Exhibit A (Declaration of Sgt. Rene McNish[3]), ¶¶9-15; 19.)

84.   On or about March 11, 2013, David Jakubowski was arrested. Officer McNish interviewed David Jakubowski During the interview, David Jakubowski admitted to sexually assaulting and/or raping K.W.1, K.W.3, A.W.1, and A.W.2. (*See* Exhibit A (Declaration of Sgt. Rene McNish), ¶¶17-19.)

85.   David Jakubowski further explained that he preferred to sexually abuse younger males, because they were easier to persuade and force. David Jakubowski cooly warned Officer McNish that he would sexually assault another young boy if given the opportunity. Officer McNish found David Jakubowski's admissions "chilling."

_____

[3] The Declaration of Sgt. Rene McNish is attached sans exhibits.

(*See* Exhibit A (Declaration of Sgt. Rene McNish), ¶¶19-20.)

86. On or about March 20, 2013, Stephanie Luong, a County Probation Officer, and Vu "Jimmy" Nguyen, David's DPSS Social Worker, re-interviewed David regarding the sexual abuse allegations. During this interview, David again admitted to sexually molesting K.W.1, K.W.3, A.W.1, and A.W.2.

– ***David Jakubowski Pleads Guilty to Sexually Assaulting Plaintiffs***

87. On March 13, 2013, the County charged David Jakubowski with nine (9) felony counts of violating Cal. Penal Code, §288(b), i.e., Lewd and Lascivious Act Upon a Child Under the Age of 14 with Force, Violence, Duress, Menace and Fear.

88. On April 4, 2013, David Jakubowski plead guilty – and freely admitted – to five (5) felony counts of Lewd and Lascivious Acts Upon a Child Under the Age of 14 with Force, Violence, Duress, Menace and Fear.

89. On April 4, 2013, David Jakubowski plead guilty – and freely admitted – to committing Lewd and Lascivious Acts Upon a Child Under the Age of 14 with Force, Violence, Duress, Menace and Fear upon Plaintiffs K.W.1 and K.W.2.

90. The Juvenile Court accepted David Jakubowski's admission, found the five (5) felony charges to true, and adjudged him a Ward of the court.

91. On or about April 11, 2013, David Jakubowski is released from Juvenile Hall, and placed at Trinity Youth Services – Apple Valley, a residential facility that provided  24-hour supervision, structure, sex offender treatment services and monitoring.

– ***In January 2015, the County Places David Jakubowski in the Castro Home (Foster Home No. 5) – Without Disclosing His Sexually Inappropriate Conduct or Other Potentially Dangerous Propensities***

92. In or around December 2014, David Jakubowski was released from Trinity Youth Services. Upon release, the County took custody of David Jakubowski

93. In January 2015, the County and Social Worker Sonya Fowler placed David Jakubowski in Lisa Castro's foster home (Foster Home No. 5) – through A

1    Coming of Age, Foster Family Agency.

2    94.   At the time of placement, the County and Ms. Fowler knew that David Jakubowski

3          had admitted to sexually assaulting his younger foster brothers, had felony sexual

4          assault conviction, and a history of sexually inappropriate behaviors – as

5          documented in his DPSS and Probation files.

6    95.   The County and Ms. Fowler did not provide Ms. Castro or A Coming of Age with

7          the pertinent details regarding David Jakubowski's prior history of multiple

8          inappropriate sexual behaviors toward younger boys. (*See* Exhibit B (Declaration

9          of Lisa Castro[4]), ¶¶2-4.) Ms. Fowler – or any County social worker – never told A

10         Coming of Age that David Jakubowski had been arrested, charged, and convicted

11         of sexually assaulting and/or raping hist foster brothers. The County's Statement

12         of Dangerous Propensities did not disclose David Jakubowski's prior sexual

13         assault of young boys or that he remained a risk to others.

14   96.   Following David Jakubowski's placement in Foster Home No. 5, Ms. Castro and

15         A Coming of Age attempted to obtain more details regarding David Jakubowski

16         But, the County and Ms. Fowler ignored the inquires. (*See* Exhibit B (Declaration

17         of Lisa Castro), ¶5.)

18         –    ***In August 2015, the County Places minor G.M. in the Castro Home***

19              ***(Foster Home No. 5) With David Jakubowski – a Known Sexual Predator***

20   97.   In August 2015, The County and Social Worker Hill placed G.M. in Ms. Castro's

21         foster home with David Jakubowski, a known sexual perpetrator.

22   98.   The County, Social Worker Hill, and Social Worker Fowler did not provide any

23         warning or instructions regarding G.M. and/or David Jakubowski, and did not set

24         up any safeguards to protect G.M. (*See* Exhibit B (Declaration of Lisa Castro), ¶8.)

25         The County, Social Worker Hill, and Social Worker Fowler never warned Ms.

26         Castro against leaving David Jakubowski alone with younger boys or G.M.

27

28         [4] The Declaration of Lisa Castro is attached with redactions and sans exhibits.

COMPLAINT FOR DAMAGES

99.   Predictably, in September 2015, David Jakubowski sexually assaulted and raped G.M. Just as David Jakubowski warned he would. David Jakubowski was arrested.

100.   Following his arrest, the County charged David Jakubowski with felony counts of violating Cal. Penal Code, §288(b). David Jakubowski admitted to sexually assaulting G.M., and plead guilty.

101.   In September and October, the County investigated Ms. Castro to determine whether she was neglectful in preventing G.M's sexual assault and rape by David Jakubowski After conducting a thorough and complete investigation, the County concluded that Ms. Castro was not at fault for G.M.'s sexual assault. Instead, the County concluded that Ms. Fowler failed to provide Ms. Castro with the pertinent details regarding David Jakubowski's prior history of inappropriate sexual behaviors toward younger boys.       The County thus found that Ms. Castro could not foresee David Jakubowski's sexual assault and rape of G.M.

## FIRST CLAIM FOR RELIEF – §1983

### *FAILURE TO PROTECT FROM HARM/STATE CREATED DANGER*

(By All Plaintiffs Against Defendants M. Sonia Correa, Daniela Elihu, Kaila Paul, Juan Cevallos, Kristen Preston, and DOES 1 through 20, inclusive.)

102.   Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 101.

103.   The Fourteenth Amendment imposes a duty on the government to protect individuals from harm by third parties where it exposes a Plaintiffs to danger by acting with deliberate indifference to a known or obvious danger. *Henry A. v. Willden*, 678 F.3d 991, 998 and 1002 (9th Cir. 2012). When a government official creates or exposes an individual to a risk of harm – and the individual is injured as a result – constitutional rights are violated. *Id.* at 1002-1003.

104.   The DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, at all relevant times, had direct access to David Jakubowski's Juvenile Case File and his CWS/CMS history. These juvenile records and

CWS/CMS database documented and/or contained information concerning David Jakubowski's various behaviors and conditions identified above – including but not limited to his sexually deviant and dangerous propensities, and/or his prior sexual molestations and/or assaults.

105. DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, knew, or with the exercise of reasonable care should have known, that David Jakubowski exhibited sexually deviant behaviors, and/or previously sexually molested another child.

106. DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, knew, or with the exercise of reasonable care should have known, that D.B. exhibited signs of being sexually abused, and that D.B. disclosed that David Jakubowski had sexually abused him.

107. Despite this, DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, refused to warn Ms. Wheeler or Plaintiffs of David Jakubowski's known and/or suspected dangerous propensities and/or inappropriate behaviors – including David Jakubowski's sexually deviant and aggressive behaviors. They also suppressed and/or refused to disclose the fact that: (1) David Jakubowski sexually molested another child, and (2) D.B. disclosed that David Jakubowski had sexually abused him. This conduct paved the way for David Jakubowski to sexually molest Plaintiffs.

108. DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, lied about David Jakubowski's inappropriate behavior and/or dangerous propensities, because they wanted to induce Ms. Wheeler into accepting David Jakubowski into her home. And, they feared that if Ms. Wheeler knew the truth, that she would reject David Jakubowski's placement.

109. At the time of David Jakubowski's placement, DPSS, Defendants Correa, Elihu, Paul, and/or DOES 1-20, and each of them, knew that the minor Plaintiffs lived in the Wheeler home – and that David Jakubowski would directly interact with

1    and/or have access to the minor Plaintiffs.

2    110.   Plaintiffs would not have faced David Jakubowski's sexual abuse if DPSS,

3    Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of

4    them, had provided adequate protection and safety. DPSS, Defendants Correa,

5    Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, and each of them, ignored the

6    potential risk to the minor Plaintiffs.

7    111.   Plaintiffs would not have faced David Jakubowski's sexual abuse if the DPSS,

8    Defendants Correa, Elihu, Paul, Cevallos, Preston, and/or DOES 1-20, had

9    provided adequate protection and safety.

10   112.   As a direct and proximate result of Defendants' conduct, the minor Plaintiffs'

11   rights arising under the Fourteenth Amendment were violated; and, Plaintiffs

12   suffered damages thereby, as according to proof at trial.

13   113.   Defendants DPSS, Defendants Correa, Elihu, Paul, Cevallos, Preston, and DOES 1

14   through 20's conduct as herein alleged was intentional and/or with a conscious

15   disregard for the minor Plaintiffs' rights. As a result of this misconduct, Plaintiffs

16   are entitled to recover punitive damages.

17                          **SECOND CLAIM FOR RELIEF**

18          ***MONELL RELATED CLAIMS FOR FAILURE TO PROTECT FROM***

19                        ***HARM/STATE CREATED DANGER***

20              (By All Plaintiffs Against Defendant County of Riverside)

21   114.   Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth

22   in full, paragraphs 1 through 113.

23   115.   The County and DPSS had a duty to implement and follow policies, customs,

24   and/or practices (hereinafter referred to as "customs") which confirm and provide

25   the protections guaranteed under the United States Constitution. The County had a

26   duty to use reasonable care to train, supervise, and/or control its agents, so as to

27   protect these constitutional rights.

28   116.   Based on the duties charged to its social workers, including the duty to refrain

---

COMPLAINT FOR DAMAGES

from creating dangerous conditions in foster homes and/or homes, the County
knew or should have known of the need to establish policies and/or customs
required to protect the civil rights of foster families with whom their agents
regularly came into contact – and to adequately train its social workers to comply
with federal and state mandates related to placement considerations and required
disclosures that must be made to foster placements before placing a child, like
David Jakubowski, in the home.

117.  At the time of the underlying events, the County's policies included, but were not
limited to:

a.  Not requiring a social worker to regularly monitor, visit, interview, and/or
checkup on a child in foster placement.

b.  Not requiring a social worker to disclose known histories, behavioral,
medical, and/or psychiatric problems to a foster parent prior to placing the
particular child with that placement.

c.  Allowing its workers to use deceptive and coercive tactics to obtain a foster
parent's cooperation in placing a known sexually deviant or otherwise
problem plagued child.

d.  Of failing to inquire into a foster child's mental and physical history, despite
a legal obligation to do so.

e.  Of misrepresenting and/or concealing a foster child's history and needs in
order to attain placement.

f.  Of concealing and/or failing to report disclosures and/or allegations that a
foster child had sexual assaulted another minor child to a foster parent;

g.  Of failing to take any meaningful action to remove a child whose presence
poses a threat to several other children in the same placement;

h.  Allowing social workers to forgo reporting and/or investigating reports of
neglect and/or abuse.

i.  Not providing safety warnings that a child – with know sexual assault

propensities – should be monitored, watched, and/or not left alone around minor boys.

118. At the time of the underlying events, the County's customs and practices included, but were not limited to:

    a.   Not providing foster parent's with information regarding a child's prior sexual assaults.

    b.   Not requiring a social worker to regularly monitor, visit, interview, and/or checkup on a child in foster placement.

    c.   Not including in court reports the details regarding a child's prior sexual assault conviction.

    d.   Ignoring a foster parent's requests for more information regarding a child's prior sexual assault conviction.

    e.   Not providing safety warnings that a child – with know sexual assault propensities – should be monitored, watched, and/or not left alone;

    f.   Not informing a current foster parent that disclosures and/or allegations of sexual abuse were made against a foster child in their care;

119. When the SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, created the danger to the minor Plaintiffs as detailed above, they were acting pursuant to and in accordance with the County's regularly established customs, policies, and practices.

120. When the SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, withhold and/or suppressed David Jakubowski's known and/or suspected dangerous propensities and/or behaviors from Ms. Wheeler and Plaintiffs, they were acting pursuant to and in accordance with the County's policies, customs, or practices. The SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, above described actions were carried out with supervisor authorization and/or approval. The County's Social Worker Supervisors did not discipline, investigate, and/or report their subordinate social workers for failing to act pursuant to and/or in

1   accordance with the County's policies, customs or practices in dealing with
2   Plaintiffs.

3   121.   The County did not investigate or discipline any of the Individual Defendants for
4          or in relation to their respective conduct, acts, and/or omissions alleged herein.
5          The County regularly fails to discipline and/or investigate its social workers for
6          withholding and/or suppressing information regarding a foster child from a foster
7          parent.

8   122.   The County refuses to admit that its social workers commit a constitutional
9          violation when they fail to protect a child from harm, and failing to ensure the
10         Plaintiffs' reasonable safety and minimally adequate care. The County denies that
11         the SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, violated the
12         Plaintiffs' constitutional rights. The County ratified and/or approved of the
13         SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, conduct involving
14         David Jakubowski and the Plaintiffs.

15  123.   The County failed to train its social workers and agents on the constitutional rights
16         of a parent and child, including but not limited to:

17         a.   That the Fourteenth Amendment protects a foster family's right to remain
18              free of dangerous conditions created by social worker conduct or
19              misconduct, including the rights of children living in the home.

20         b.   That social workers seeking to place a child in a foster home are required to
21              disclose current and relevant information to the care provider regarding the
22              health, education, known or suspected dangerous behaviors, psychiatric
23              issues, and a host of other information to the foster care provider.

24         c.   That social workers may not forgo reporting and/or investigating reports of
25              neglect and/or abuse, including sexual abuse occurring within a foster
26              home.

27         d.   That social workers are required to disclose known histories, behavioral,
28              medical, and/or psychiatric problems to a foster parent of prospective

COMPLAINT FOR DAMAGES

adoptive parent prior to placing the particular child with that placement.

e.     That social workers may not use deceptive and coercive tactics to obtain a foster parent's cooperation in placing a known sexually deviant or otherwise problem plagued child.

f.     That social workers may not misrepresent and/or conceal a foster child's history and needs in order to attain and/or continue a placement.

g.     That social workers must take meaningful action to set up safeguards and/or remove a child whose presence poses a threat to several other children in the same placement;

124.   The County's failure to train its agents on these established constitutional rights was a substantial factor in causing the Plaintiffs harm. Without adequate training, the SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, were unfamiliar with and oblivious to the Plaintiffs' rights.

125.   The County knew or should have known the full nature and extent of the above enumerated rights and obligations. But, the County knowingly refrained from (1) revising and/or implementing relevant policies, and (2) training it social workers regarding the identified rights and obligations.

126.   Over the years, the County and its employees engaged in similar violations of constitutional rights by failing to protect children from harm inflicted by a foster child. These include, but are not limited to, the following:

a.     *G.M. v. County of Riverside*, Case No. RIC1615673. In *G.M.*, after David Jakubowski was criminal convicted for sexually assaulting his minor foster brothers, the County placed him in a foster home without warning or providing the pertinent details of that minor's inappropriate sexual history. The County next placed G.M., a minor male child, in that same foster home as David Jakubowski, again without warning or setting up appropriate safeguards. The County ignored the foster mothers warning that David Jakubowski's behavior was rapidly deteriorating. Predictably, David

1    Jakubowski sexually assaulted minor G.M.

2    127.  These actions, and/or inactions, of the County were the moving force behind the

3    Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs' have sustained

4    general and special damages, in an amount to be proven at trial.

5    **THIRD CLAIM FOR RELIEF**

6    ***BREACH OF MANDATORY DUTIES***

7    (By All Plaintiffs Against All Defendants, and DOES 1 through 20, inclusive.)

8    128.  Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth

9    in full, Paragraphs 1 through 126.

10   129.  Defendants were obligated by constitutional provisions, statutes, and/or

11   regulations, as stated above, to document, report and subsequently inform others,

12   including Plaintiffs and/or Ms. Wheeler, about David Jakubowski's physical,

13   medical, behavioral, and emotional conditions as described in greater detail above,

14   including his prior sexual conduct in the previous home and/or foster placements.

15   130.  However, Defendants did not document the information; they did not report the

16   information and they did not inform others about the known dangers David

17   Jakubowski presented to Plaintiffs.

18   131.  Defendants County, SOCIAL WORKER DEFENDANTS, and DOES 1 through

19   20, violated and/or breached mandatory and nondelegable duties. This includes,

20   but is not limited to, those set forth in regulations in the California Department of

21   Social Services (CDSS) Manual of Policies and Procedures (MPP) established

22   pursuant to Welfare & Institutions Code Section 16501, and set forth in the

23   California Penal Code.

24   132.  The specific regulations and laws violated by Defendants County, SOCIAL

25   WORKER DEFENDANTS, and DOES 1 through 20, include, but are not limited

26   to the following:

27   a.    Cal. Welf. & Inst. Code, §361.4 and CDSS MPP Regulations 31-400

28   (Placement), 31-405, 31-420, and 31-445, by failing to fulfill a social

COMPLAINT FOR DAMAGES

23

1          worker's responsibilities for placement.

2      b.  CDSS MPP Regulations 31-300 (Service Delivery), 31-320 and 31-330, by

3          failing to adequately conduct face-to-face contacts with Plaintiffs.

4      c.  CDSS MPP Regulations 31-200 (Assessment and Case Plan) by failing to

5          failing to perform an assessment on A.S. to include any and all relevant

6          social, cultural, and physical factors that may impact her placement. And,

7          when placing M.T. in the Solares Homes, by failing to assess the

8          characteristics of the other children residing within the home.

9      d.  CDSS MPP Regulations 31-501, by failing to report and/or investigate

10         reports of neglect and/or abuse of Plaintiffs and other children.

11     e.  CDSS MPP Regulations 31-445, by failing to monitor Plaintiffs's physical

12         and emotional condition, and failing to take necessary actions to safeguard

13         the Plaintiffs's growth and development while in the Solares placement.

14     f.  Cal. Welf. & Inst. Code §366

15     g.  Cal Health & Saf. Code §1520

16     h.  Cal. DSS, Regulations 31-075; 31-101; 31-105; 31-125; 31-205; 31-206;

17         31-300, 31-310; 31-320; 31-330; 31-400, and 31-405

18     i.  22 CCR §§35079-35091; 35123; 35180-35184; 35197; 35203; 35207-

19         35207.1; 35211.

20     j.  22 CCR §§89227; 89231; 89318; 89372

21  133.  The Defendants County, SOCIAL WORKER DEFENDANTS, and DOES 1

22        through 20, failed to adhere to and/or fulfill these mandatory duties.

23  134.  The above identified constitutional provisions, statutes, and/or regulations,

24        particularly those requiring disclosure of David Jakubowski's known conditions

25        and/or behaviors, were designed to protect children and foster families such as

26        Plaintiffs.

27  135.  The requirements referenced above mandate an affirmative duty by Defendants to

28        refrain from undertaking conduct, either by act or omission, that puts the Plaintiffs

in danger they would not otherwise have faced. These duties included the duty to disclose certain information as described in detail above, to Ms. Wheeler and/or the Plaintiffs.

136.   These mandates were put in place for the express purpose of providing for the safety of children that interact with foster placements, such as Plaintiffs, and to provide foster parents with accurate information.

137.   Defendants did not comply with these duties. They failed to document David Jakubowski's sexual abuse of other minor children, failed to properly or adequately report it to law enforcement, and failed to set up safeguards and/or act to remove David Jakubowski from the Wheeler home once they had notice that David Jakubowski's had perpetrated sexual abuse against his brother, D.B.

138.   Defendants failed to diligently discharge the above enumerated duties and obligations, and that failure was the direct proximate cause of severe injuries caused to Plaintiffs at the hands of David Jakubowski Had Defendants complied with their mandatory obligations David Jakubowski's sexual abuse would not have occurred and/or ended earlier. The case reviews, reporting, and disclosures were a safeguard meant to protect against the exact type of harm Plaintiffs suffered here.

139.   The negligence of Defendants, and each of them, was the proximate, legal causes of the damages sustained by Plaintiffs, and they have incurred damages to be shown by proof at trial.

## FOURTH CLAIM FOR RELIEF

### *NEGLIGENCE*

(By All Plaintiffs Against All Defendants, and DOES 1 through 20, inclusive.)

140.   Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 139.

141.   SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, owed a duty to warn and/or fully inform Ms. Wheeler and/or Plaintiffs of any matter that they

"knew or should have known" that might endanger the Plaintiffs or their family. *Johnson v. State of Cal.*, 69 Cal.2d 782, 785 (1968). This includes disclosure of David Jakubowski's latent, dangerous qualities, and/or his background of inappropriate sexually deviant propensities, and/or any disciplinary record.

142. SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, had an affirmative obligation to avoid putting Plaintiffs in danger, including making sure the relevant background information regarding David Jakubowski's history was truthfully, honestly, accurately, and completely disclosed to Ms. Wheeler prior to placing David Jakubowski in the Wheeler home.

143. Prior to David Jakubowski's placement, and after being placed, SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, knew or should have know that David Jakubowski had latent, dangerous qualities – that presented a danger to Plaintiffs. But, SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, failed to and/or refused to warn Ms. Wheeler or Plaintiffs of David Jakubowski's latent dangers, or disclose the sexual abuse allegations from his home and/or prior placements.

144. Knowing of David Jakubowski's inappropriate sexually deviant history and propensities, SOCIAL WORKER DEFENDANTS, and DOES 1 through 20, permitted David Jakubowski to privately interact with the minor Plaintiffs – without any adult supervision, warning, or setting up appropriate safeguards.

145. In the absence of adequate safeguards and/or warning, predictably, David Jakubowski sexually abused the minor Plaintiffs.

146. Plaintiffs sustained physical injuries, to an extent and in an amount subject to proof at trial, as a result of SOCIAL WORKER DEFENDANTS, and DOES 1 through 20's negligence and inadequate supervision.

147. Plaintiffs's sustained psychological, mental, and/or emotional injuries, to an extent and in an amount subject to proof at trial.

148. SOCIAL WORKER DEFENDANTS, and DOES 1 through 20's negligence was a

substantial factor in causing Plaintiffs' harm.

149. Defendant County is vicariously responsible for the conduct of SOCIAL WORKER DEFENDANTS, and DOES 1 through 20 under Cal. Gov't Code, §815.2.

## **Jury Trial Demand**

150. Plaintiffs demands a jury trial on each Claim for Relief set forth above.

## **Prayer for Relief**

WHEREFORE, Plaintiffs prays for judgment against Defendants, as to all causes of action, as follows:

1. General damages and special damages according to proof;

2. As against the individual defendants, punitive damages as allowed by law;

3. Attorneys fees and costs pursuant to 42 U.S.C. §1988, and any other appropriate statute;

4. Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief to be based upon a separate application);

5. Costs of suit incurred herein; and

6. Such further relief as the Court deems just and proper.

Dated: July 21, 2021          THE LAW OFFICES OF SHAWN A. MCMILLAN, APC

/s/ Stephen D. Daner
Shawn A. McMillan, Esq.
Stephen D. Daner, Esq.

Attorneys for Plaintiffs K.W.1 and K.W.2

# Exhibit A

# Exhibit A

# Exhibit A

1  Shawn A. McMillan, Esq. – SBN: 208529
   Stephen D. Daner, Esq. – SBN: 259689
2  Adrian M. Paris, Esq. – SBN: 301355
   THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
3  4955 Via Lapiz
   San Diego, CA 92122
4  Telephone: (858) 646-0069
   Facsimile: (858) 746-5283
5

6  Attorneys for Plaintiff G.M.

7                 **SUPERIOR COURT OF CALIFORNIA**

8           **COUNTY OF RIVERSIDE, CENTRAL DIVISION**

9

| | |
|---|---|
| G.M., a minor, by and through his Guardian ad litem, | Case No.:  RIC1615673 |
| Plaintiff, | **DECLARATION OF SGT. RENE MCNISH** |
| vs. | Judge:      Hon. Chad W. Firetag |
| COUNTY OF RIVERSIDE, a public entity; MARLO ANN CRUZ, an individual; CARRIE MOSIELLO, an individual; MICHAEL HUSER, an individual; JAIMEE WICKS, an individual; MICHELLE TARDANICO, an individual; SONYA FOWLER, an individual; JOHNNIE FOUNTAIN, an individual; KIMBERLE HILL, an individual; JEREMY DOE, an individual; COLIN VILLIERS, an individual; DOES 1 through 30, inclusive, | Dept:        03 |
| Defendants. | Complaint Filed:   November 28, 2016 |

21  / / /

22

23

24  / / /

25

26

27

28

---

DECLARATION OF SGT. RENE MCNISH

## DECLARATION OF SGT. RENE MCNISH

I, Sgt. Rene McNish, declare as follows:

1.  I am currently a Sergeant with the Imperial County Sheriff's Department. I am not a party to this action. If called upon to testify, I could competently testify to the following facts as they are personally known to me.

2.  In 2013, I was a Police Investigator with the Hemet Police Department's Crimes Against Persons Bureau. Prior to becoming an Investigator, I attended a forty hour, week-long, special investigations course. This course included instruction on investigating child abuse and/or neglect, including interview strategies and techniques.

3.  In January 2013, I was assigned to investigate a sexual battery. The suspect was David Jakubowski.

4.  During my investigation I made personal observations and took contemporaneous notes. Shortly after my interviews with the witnesses, I documented my personal observations and investigation in a Supplemental Incident Report (DR# 13-278). I personally drafted Supplemental Incident Report (DR# 13-278). A true and correct copy of my Supplemental Incident Report (DR# 13-278) – with the minor victims' names redacted – is attached hereto as **Exhibit 138**.

5.  After receiving and reviewing the case, I contacted the Riverside County Child Assessment Team (RCCAT) and scheduled interviews for the five (5) minor victims.

6.  At the RCCAT interview, I spoke with Elizabeth Wheeler, the victim's mother and/or foster mother. Ms. Wheeler handed me a drawing Victim One made. Ms. Wheeler informed me that the drawing was a picture of Victim's buttocks with David's "wiener" next to it. I took the drawing, and booked it into evidence.

7.  The RCCAT Interviews were done in a room equipped with an audio/video capable camera. I personally viewed the real time video display in an

---

adjacent room. I had the ability to contact with the examiner while her examination was ongoing, and ask questions through her. The examiner did a thorough job. During the interviews the minor male victims disclosed information and revealed many details of David Jakuboski's sexually abusive conduct. The victims were very detailed in describing the various things that David Jakuboski's did.

8.    I took detailed notes of the interviews, and shortly after the interviews were completed, I memorialized and documented my personal observations in my Supplemental Incident Report (DR# 13-278). (*See* Exhibit 138.)

9.    Victim One told the examiner that "David put his Wiener in his butt." And, that this happened on multiple occasions. Victim One described the most recent assault in detail. Victim One explained that David was lying on his back, and David was putting his wiener in his buttocks. Victim One further described his attempts to resist David's sexual assault, and how he managed to "kicked him off." During the interview, Victim One was able to identify the penis and buttocks on a drawing. And, indicated that the buttock was where David put his wiener. Victim One was also able to describe and draw David's male genitalia.

10.   Victim Two witnessed David's sexual assault of Victim One. He explained that David was lying on top of Victim One and put "his wiener on" Victim One's "butt." Victim Two described Victim One's struggle to push David away, and told David to stop. But, David "kept holding him back" and "grinding him." Victim Two observed David's wiener as it passed between Victim One's legs.

11.   Victim Two disclosed that David did "the same exact thing" to him on more than one occasion. Victim Two blurted out that David "put his wiener on my legs!" Victim Two used his hands to point to his inner thigh, above the knee cap. During the interview, Victim Two was able to identify the penis on a drawing. And, indicated that David put his wiener on the inner thigh, just

1    below the buttocks.

2    12.    Victim Two described an incident where David pushed him onto the bed,

3    pulled their pants and underwear to their feet, and "he started doing it."

4    Victim Two explained that David put his "wiener on my legs." Victim Two

5    tried to resist and kicked him. But, David held Victim Two by the stomach,

6    and kept pulling him back. David also threatened to knock Victim Two out.

7    Victim Two was glad that David was in a different foster home, because

8    now he doesn't have to "worry about him doing that nasty stuff."

9    13.    During the interview, Victim Three stated that "David he used to get me

10    naked and like punch me in my head. And he would like, get his penis and

11    rub it and then put it between my legs." I observed this statement, and as

12    Victim Three was saying this, it was clearly obvious to any viewer watching

13    the interview on camera that this was a very disturbing process for victim

14    three. Victim Three was hugging his own body and rocking himself in an

15    effort to calm down. Victim Three revealed that this happened more than

16    once.

17    14.    Victim Three described a sexual assault. Victim Three said that David

18    would "push me on the bed and he'd kick me and then he got me naked and

19    did it." Victim Three explained that he went to his room after showering.

20    David was waiting in Victim Three's room for him to finish his shower.

21    David socked (punched) Victim Three in the back of his head and kicked

22    him. David removed Victim Three's clothing. David then took his "penis"

23    out, and "rubbed it" between Victim Three's legs, near his upper thigh.

24    Victim Three tried to escape and told David to "get off" him. But, David

25    "socked" him (punched) him in the head.

26    15.    Victim Three did not tell anyone about the sexual assaults, because David

27    threatened to stab him and beat him up.

28    17.    Based on the evidence uncovered during my investigation and the minor

victim's disclosures, I concluded that David Jakubowski had sexually

assaulted his younger foster brothers, and that his conduct reached the degree that I felt he should be charged with criminal sexual assault and battery. I took David into custody and transported him to the Hemet Police Department for further questioning.

18.   After his initial detention, I read David the Miranda advisement. I ensured that David understood his rights. David demonstrated to my satisfaction that he understood the Miranda advisement.

19.   I interviewed David again at the Hemet Police Department. David was remarkably honest with me. He admitted to me that he sexually assaulted and molested his four younger foster brothers. During my interview David admitted the following:

   A.   David would block his bedroom door with his mattress and have his way with his younger foster brothers – i.e., Victims One, Two, Three and Five. David would place his penis between the minor victims' legs (near their buttocks and penis). David would rub his penis on the minor victim's body until he reached climax and ejaculated. Depending on the minor victim, this happened one to four times per victim in David's bedroom.

   B.   On multiple occasions, David forced his younger foster brothers – i.e., Victims One, Two, Three and Five – to perform oral copulation on him, until he reached climax and ejaculated.

   C.   David knew that his conduct was wrong, but his pleasurable experience overwhelmed his feelings of guilt. David could not stop.

   D.   David chose to sexually assault his younger foster brothers – as opposed to his foster sister – because it was easier for David to convince his younger foster brothers to do it.

20.   The most chilling part of the interview, however, was at the end. When I asked David if he were left alone with another unsuspecting young boy, would he sexually assault that child, he cooly answered yes.

---

DECLARATION OF SGT. RENE MCNISH

4

21.   Based on David's statements, the Minor Victims' statements, and my personal observations as recorded in my Supplemental Incident Report (DR# 13-278), I placed David under arrest for violation of California Penal Code §288(b)(1), §288.5(a), and §288a(2)(a).

22.   In my opinion, the investigation was cut and dry. David admitted that he sexually assaulted his four younger foster brothers. Further, the minor victims corroborated and disclosed the details of David's sexual assaults. And., during the interview, the minor male victims displayed physical behaviors consistent with those displayed by victims of sexual abuse.

23.   David was booked and transported to the Southwest Juvenile Hall in Murrieta, CA.

24.   On March 11, 2013, I personally drafted a Declaration and Determination (Probable Cause for Warrantless Arrest) for David Jakubowski. A true and correct copy of my Declaration and Determination (Probable Cause for Warrantless Arrest) – dated March 11, 2013 – is attached hereto as **Exhibit 139**.

25.   I forwarded this case to the County of Riverside's District Attorney's Office for review and filing of criminal charges. At this time, the County of Riverside had all the information and evidence uncovered in my investigation.

I declare under penalty of perjury according to the laws of the United States that the foregoing is true and correct. Executed this August 14, 2019, in San Diego, California.

*) except as to those matters stated on information and belief and as to those matters, I believe them to be true.*

Sgt. Rene McNish

# Exhibit B

# Exhibit B

# Exhibit B

1 | Shawn A. McMillan, Esq. – SBN: 208529
2 | Stephen D. Daner, Esq. – SBN: 259689
   | Adrian M. Paris, Esq. – SBN: 301355
3 | THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
   | 4955 Via Lapiz
4 | San Diego, CA 92122
   | Telephone: (858) 646-0069
   | Facsimile: (858) 746-5283
5 |
6 | Attorneys for Plaintiff G.M.

7 | **SUPERIOR COURT OF CALIFORNIA**

8 | **COUNTY OF RIVERSIDE, CENTRAL DIVISION**

| | |
|---|---|
| G.M., a minor, by and through his Guardian ad litem, | Case No.:   RIC1615673 |
| | **DECLARATION OF LISA CASTRO** |
| Plaintiff, | |
| vs. | Judge:   Hon. Irma Poole Asberry |
| | Dept:   03 |
| COUNTY OF RIVERSIDE, a public entity; MARLO ANN CRUZ, an individual; CARRIE MOSIELLO, an individual; MICHAEL HUSER, an individual; JAIMEE WICKS, an individual; MICHELLE TARDANICO, an individual; SONYA FOWLER, an individual; JOHNNIE FOUNTAIN, an individual; KIMBERLE HILL, an individual; JEREMY DOE, an individual; COLIN VILLIERS, an individual; DOES 1 through 30, inclusive, | Complaint Filed:   November 28, 2016 |
| Defendants. | |

21 | / / /
22 |
23 |
24 | / / /
25 |
26 |
27 |
28 |

---

**DECLARATION OF LISA CASTRO**

## DECLARATION OF LISA CASTRO

I, Lisa Castro, declare as follows:

1.    I am a certified foster parent through A Coming of Age, Foster Family Agency in Riverside, California. I am David Jakubowski and G███ M███' former foster mother. I am not a party to this action. If called upon to testify, I could competently testify to the following facts as they are personally known to me.

2.    In 2015, I was a foster parent and my foster home was certified by A Coming of Age, Foster Family Agency. On or about January 7, 2015, Ms Fowler placed David Jakubowski – age sixteen (16) – in my foster home. Ms. Fowler provided me with the County's Statement of Dangerous Propensities for David. I personally reviewed this statement. David's Statement of Dangerous Propensities did not disclose his prior sexual assault of young boys, or that he remained a risk to himself and others. A true and correct copy of the Statement of Dangerous Propensities provided to me when David was placed in my home is attached hereto as **Exhibit 176**.

3.    Ms. Fowler also provided me with the County's Foster Child's Needs and Case Plan Summary for David. I personally reviewed this plan summary. David's Foster Child's Needs and Case Plan Summary did not disclose his prior sexual assault of young boys. A true and correct copy of David's Foster Child's Needs and Case Plan Summary is attached hereto as **Exhibit 177**.

4.    During David's placement process, no County social worker(s), probation officer(s), and/or employee(s) ever warned me that David had a known proclivity to sexually assault young boys.

5.    In the months following David's placement in my home, I continued to ask Ms. Fowler and David's probation officers, including Colin Villiers, for details regarding David's prior conviction and probation. The foster faimily

1   agency represented to me that David was convicted for his involvement in
2   sexual behavior with a girl. The County's probation officers, including
3   Colin Villiers, completely ignored my multiple calls and inquiries.
4   6.   I only learned, much later, that David had been convicted for the sexual
5        assault of his younger foster brothers in a prior placement when the workers
6        investigating G.M.'s rape told me about it. Prior to that, no County social
7        worker(s), probation officer(s), and/or employee(s) ever disclosed the
8        details regarding David's probation and conviction to me or otherwise
9        instructed that he was a danger to young boys.
10  7.   Prior to July 2015, Ms. Fowler visited my foster home. Ms. Fowler saw that
11       I also had a young foster boy, L███ S████, in my home. I believe that
12       L███ was around nine (9) or ten (10) years old at this time. On another
13       visit, sometime in July 2015, Ms. Fowler saw that David and L███ were
14       sharing a room. After seeing this, Ms. Fowler told me that David and L███
15       could not room together because of their age difference. Ms. Fowler did not
16       elaborate, or warn me that David had a known propensity to sexually assault
17       young boys.
18  8.   On or about August 4, 2015, G███ M███ and D███ M███, his brother,
19       were placed in my home. The County social workers and Kimberle Hill,
20       G███'s social worker, did not provide any warning or instructions
21       regarding G███ and D███. At this time, G███ was six (6) years old and
22       D███ was thirteen (13) years old.
23  9.   After G███ was placed in my home, David's behavior deteriorated, he
24       started acting out, he began AWOL-ing more often, he was smoking
25       marijuana, and not going to school. I repeatedly told David's probation
26       officer(s) and Ms. Fowler that David's behavior was deteriorating –
27       including the details of his behaviors. David's probation officer(s) and Ms.
28       Fowler did not respond to any of my complaints or concerns.
    10.  On September 16, 2015, I asked N████s, my son, to watch after Ga███

DECLARATION OF LISA CASTRO

2

1     while I was at a visit with another foster child. This visit was between 3:00

2     pm and 5:00 pm. At approximately 3:45 pm, D██ returned home from

3     school. N██ called to asked whether D██ and his friends could play

4     behind the house. I said yes.

5     11.   In September 2015, C██ and his brother had weekend visitation with Nora

6     and Robert Nix from 4:30pm Friday until 4:30pm Sunday. On September

7     19, 2015, Nora called me at 9:15am stating G██ disclosed that he was

8     sexually molested by David sometime on Wednesday September 16, 2015. I

9     told Nora that I would call Mr. Mc Coy and the police. I called Mr. McCoy

10    and informed him of G██'s allegation. Mr. McCoy told me to call the

11    police right away, and to get G██ home so that he could speak with the

12    police. I did so. The police also requested that I arrange for G██ to return

13    home. I called Nora, and told he to bring C██ home ASAP. Deputy Areh

14    arrived at approximately 10:00 am. G██ arrived home at approximately

15    10:45 am.

16    12.   Deputy Areh interviewed G██. I was present for C██'s interview.

17    Initially, G██ was very quiet, and was not forthcoming with information.

18    G██ soon opened up about the details of David's sexual assault and rape.

19    13.   At 2:00 pm, Social Worker Tamar Lawson and a Deputy arrived at my

20    home, and took G██ to the police station to obtain additional information.

21    Ms. Lawson instructed me to stay home, and ensure that David did not

22    leave. Deputy Areh soon returned, and took David to the Moreno Valley

23    Police station for questioning. Afterward, the Crime Scene Investigation

24    Unit arrived, and gathered evidence – including David's blankets and sheets

25    and G██'s clothing from Wednesday.

26    14.   At approximately 5:00 pm, Nora called, and told me that Ms. Lawson was

27    taking G██ to a medical examination. Afterward, C██ would be brought

28    back to the Nix's home.

       15.   At approximately, 9:30 pm Nora told me that the medical examination

1        confirmed that G█ had been sexually assaulted.

2  16.  At approximately, 11:00 pm, Ms. Lawson called, and said she would

3       interview David. Ms. Lawson was supposed to call me back, but never did. I

4       did not see David again that night.

5  17.  On September 20, 2018, I called the Juvenile Hall to ask about David's

6       whereabouts. I was told that David was in custody at Juvenile Hall, and was

7       charged with Penal Code, §269 (Rape).

8  18.  At approximately 6:30 pm, Ms. Lawson returned to my home for further

9       investigation. Ms. Lawson told me about David's prior sexual assault

10      convictions, and that David had an extensive history of sexually molesting

11      young boys. Ms. Lawson further told me that David never should have been

12      placed in my foster home. Ms. Lawson was trying to determine why David

13      had been placed in my home to begin with, because David should been

14      maintained in a group home or another appropriate setting.

15  19.  I was shocked, extremely upset, and disappointed. This was the first time

16      that anyone had ever revealed the pertinent details regarding David's

17      conviction and prior sexually assaults involving young boys. I complained

18      that in suppressing this information, all other foster children in my home

19      and all other visiting children were in great risk of being harmed. If I had

20      known about David's prior convictions and history of sexually molesting

21      young boys, I never would have accepted his placement in my home.

22  20.  I complained to Ms. Lawson, that I had made numerous attempts to obtain

23      information to clarify David's situation and gain an understanding of how I

24      should be treating and/or dealing with him. But, the County Probation

25      officers ignored my request. I later learned, I think from David himself, that

26      his conviction was related to his involvement in sexual behavior with a girl

27      that was a few years younger.

28  21.  On or about September 24, 2015, I spoke with Ms. Fowler. She admitted

         that she did not know that the County had placed G█, D█, and other

1    minors in my home. She was very surprised that ▮▮▮ was in my home.

2    22.   On or about September 30, 2015, Anthony Tovar, from the County's Out-

3          of-Home Investigation Unit, contacted me. Mr. Tovar explained that he was

4          investigating me for neglect relating to David's sexual assault of ▮ I

5          acknowledged that his investigation regarded a child being raped in my

6          home.

7    23.   On or about October 21, 2015, Mr. Tovar told me that the investigation for

8          neglect was completed and that it was being closed as unfounded. The

9          County concluded that its social workers and probation officers erred.

10         Specifically, I was informed that the County concluded its workers failed to

11         provide me with the pertinent details regarding David's conviction and prior

12         history of inappropriate sexual behaviors toward younger boys. And, as a

13         result, I could not foresee David's sexual assault and rape of ▮▮▮.

14   24.   On September 19, 2015, I documented the incident, and my interactions

15         with the social workers and law enforcement. A true and correct copy of my

16         typed and handwritten statement – signed September 19, 2015 – is attached

17         hereto as **Exhibit 166**.

18   I declare under penalty of perjury according to the laws of the United States that

19   the foregoing is true and correct. Executed this October 24, 2018, at Moreno Valley,

20   California.

21

22                                    Lisa Castro

23

24

25

26

27

28

---

DECLARATION OF LISA CASTRO

5